**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1542

UNIVERSAL MARITIME SERVICES; SIGNAL MUTUAL
INDEMNITY ASSOCIATION,

Petitioners,

versus

WILLIE L. PERRY; CERES MARINE TERMINALS;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(03-468-A)

Argued: February 2, 2005          Decided: March 18, 2005

Before WILKINSON and KING, Circuit Judges, and Samuel G. WILSON,
United States District Judge for the Western District of Virginia,
sitting by designation.

Affirmed by unpublished per curiam opinion.

Richard John Barrett, VANDEVENTER BLACK, L.L.P., Norfolk, Virginia,
for Petitioners. Lawrence Philip Postol, SEYFARTH SHAW,
Washington, D.C., for Respondents.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Universal Maritime Services ("Universal") appeals the decision of the Benefits Review Board of the Department of Labor ("BRB") awarding Willie Perry compensation for his hearing loss under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. Perry v. Universal Maritime Servs., No. 03-0468 (BRB Apr. 6, 2004) (unpublished) (the "BRB Opinion"). The BRB Opinion affirmed the earlier Decision and Order of the Administrative Law Judge ("ALJ"), see Perry v. Ceres Marine Terminals, No. 2001-LHC-1909 (Dep't Labor Mar. 17, 2003) (the "ALJ Decision and Order"), concluding that Perry's third audiogram was determinative and that Universal was the employer responsible for Perry's hearing loss benefits. As explained below, the ALJ's finding that Perry's third audiogram was determinative is supported by substantial evidence, and we thus affirm the decision of the BRB.

I.

Perry has been a member of the International Longshoreman's Association since 1966. From approximately 1985 through October 30, 2000, Perry worked primarily for a work gang assigned to Ceres Marine Terminals ("Ceres"). However, when Ceres did not have available work, he worked temporarily for other

2

employers.  On October 30, 2000, Universal became Perry's primary employer.[1]

On October 26, 2000, while still employed by Ceres, Perry underwent a baseline audiogram conducted by Taylor Made Diagnostics (the "Taylor Made audiogram").  Universal arranged for the Taylor Made audiogram specifically to determine the degree of Perry's pre-employment hearing loss.  This audiogram was conducted prior to Perry's workday in a mobile van equipped with four audiometric testing stations and a soundproof steel door.  Perry had finished his workday four to five and one-half hours prior to the test, and he testified that he had been exposed to loud noise while working.  The test administrator (who was neither an audiologist nor an otolaryngologist) did not conduct other reliability tests for hearing loss, such as bone-conduction or speech reception.  The Taylor Made audiogram indicated that Perry was suffering an 8% binaural hearing loss.

On December 26, 2000, while employed by Universal, Perry underwent audiometric testing conducted by Dr. John Jacobson (the "Jacobson audiogram").  This audiogram was conducted at the Eastern

---

[1]As a longshoreman, Perry has been employed as both a hustler (a truck driver) and a slinger (a spotter for boxes lifted by a crane onto and off of ships).  As a slinger, he stands underneath cranes where he is exposed to the noise of their diesel engine motors and, as a hustler, he is exposed to similar types of noise. Perry performed the duties of both slinger and hustler while employed by Universal and Ceres.  However, he worked primarily as a hustler at Universal, inside a cab, whereas he worked primarily as a slinger at Ceres, outside in the elements.

Virginia Medical School Hearing and Balance Center in Norfolk, Virginia, and Perry had not worked during the five days preceding the test. Dr. Jacobson, the test administrator, is a board certified audiologist, and he conducted both bone-conduction and speech reception tests on Perry. The Jacobson audiogram revealed a 6.3% binaural hearing impairment.[2]

Perry filed separate hearing loss claims with the local Office of Workers' Compensation Programs against both Universal and Ceres (which were referred to the Office of Administrative Law Judges), and subsequently the two claims were consolidated by the ALJ's Order of August 22, 2001. Prior to the hearing before the ALJ, the parties stipulated that Perry suffered from hearing loss which had been caused, at least partially, by occupational noise exposure. As Perry was thereby entitled to benefits under § 8(c)(13) of the LHWCA, the only issue to be decided by the ALJ was which employer — Universal or Ceres — was responsible for Perry's benefits as a longshoreman. The ALJ issued his Decision and Order on March 17, 2003, finding the Jacobson audiogram to be determinative. See ALJ Decision and Order at 17. Accordingly, the ALJ concluded that Universal, as the last maritime employer at

---

[2]The record also reveals that a third audiogram was conducted on Perry by a concern called Miracle-Ear on December 27, 1999, prior to the Taylor Made and Jacobson audiograms. The ALJ advised the parties that he would accord no weight to the Miracle-Ear test because internal inconsistencies rendered it invalid. ALJ Decision and Order at 6 n.7. Universal makes no contention that the Miracle-Ear audiogram is determinative or relevant.

the time of Perry's most recent exposure to occupational noise, was responsible for Perry's permanent partial disability benefits. Id.

Universal appealed th ALJ Decision and Order to the BRB, contending that the ALJ had erred in failing to credit the Taylor Made audiogram and in determining that Universal was the employer responsible for Perry's benefits. The BRB affirmed the ALJ Decision and Order on April 6, 2004, see BRB Opinion at 7, and this appeal followed. We possess jurisdiction pursuant to 33 U.S.C. § 921(c).

II.

We review BRB decisions for errors of law and for adherence to the statutory standard governing an ALJ's factual findings. Norfolk Shipbldg. & Drydock Corp. v. Faulk, 228 F.3d 378, 380 (4th Cir. 2000). Section 921(b)(3) of the LHWCA directs that "the findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). Like the Board, we will uphold the factual findings of an ALJ so long as they are supported by substantial evidence, and we will not disregard those findings merely "'on the basis that other inferences might have been more reasonable.'" Faulk, 228 F.3d at 380 (quoting Director, OWCP v. Newport News Shipbldg. & Dry Dock Co., 138 F.3d 134, 140 (4th Cir. 1998)). Our review of factual findings made by an ALJ is limited, however, and "deference must be

5

given the fact-finder's inferences and credibility assessments." Id. (internal citations and quotation marks omitted).

                                III.

Whether Ceres or Universal is the responsible employer for Perry's benefits turns on the factual determination of when Perry had an audiogram that was determinative of his disability under Section § 908(c)(13) of the LHWCA. 33 U.S.C. § 908(c)(13) (providing that loss of hearing is compensable, audiogram is presumptive evidence of amount of hearing loss, and statute of limitations begins to run when employee receives audiogram); see also Ramey v. Stevedoring Servs. of Am., 134 F.3d 954, 961 (9th Cir. 1998) (determining which audiogram most reliable and awarding benefits based on date of employee's last exposure to noise prior to determinative audiogram). Universal does not contend in this appeal that the Jacobson audiogram is inaccurate; it instead maintains that the Taylor audiogram is adequate and determinative, under the LHWCA and its implementing regulations, to assign liability for Perry's benefits to Ceres. Yet, experts testified before the ALJ that the Taylor and Jacobson audiograms were contradictory, and that both could not be accurate. ALJ Decision and Order at 14.

In resolving this dispute, the ALJ engaged in an exhaustive review of the audiometric evidence, weighing and commenting on it, and then finding the Jacobson audiogram to be the

                                 6

determinative one.  See ALJ Decision and Order at 6-17.  Because

the facts relied upon by the ALJ are amply supported by the record,

and the inferences drawn by him are reasonable, we are constrained

to defer to the ALJ's assessment of the hearing tests.  That

reasoning was aptly spelled out in the BRB Opinion, which related

the following:

> Ultimately, having taken into account the following factors: 1) claimant had not been exposed to noise for five days before the test, thus eliminating concerns of a temporary threshold shift; 2) tests which confirmed the accuracy of the audiogram, including speech discrimination, speech reception and bone conduction, were performed; 3) the experts agreed that Dr. Jacobson's audiogram was the most accurate; and 4) Dr. Jacobson's audiogram meets the requirements of a presumptive audiogram under the [LHWCA],[3] the [ALJ] concluded that Dr. Jacobson's audiogram is the most credible and reliable. [ALJ] Decision and Order at 17.  In finding the Taylor Made audiogram to be less reliable, the [ALJ] considered that this test was not interpreted and certified by a licensed or certified audiologist or otolaryngologist; that claimant had worked, and had been exposed to loud noise, four to five and one-half hours prior to testing,[4] that additional testing to confirm the audiogram was not performed, and that the experts agreed

---

[3]An audiogram provides presumptive evidence of the extent of a claimant's hearing loss if certain conditions are met.  BRB Opinion at 4-5 n.3 (citing 33 U.S.C. §908(c)(13); 20 C.F.R. §702.441(b); Steevens v. Umpqua River Navigation, 35 BRBS 129, 133 n.6 (2001)).  In this proceeding, the parties have stipulated that the Jacobson audiogram meets the requirements of a presumptive audiogram.  See id. (citing ALJ Decision and Order at 3).

[4]The ALJ observed that an employee being tested should be away from noise for a period longer than four to five and one-half hours prior to an audiogram being conducted.  BRB Opinion at 5 n.4 (citing ALJ Decision and Order at 15-16).  Specifically, the ALJ relied on the expert opinions of Drs. Jacobson, Hecker, and Lee in concluding that a tested employee should not be exposed to noise for a period of at least 24 hours prior to his audiogram.  Id.

7

that the Taylor and Jacobson audiograms, although similar, are not within the values for test/retest reliability.  <u>See</u> [ALJ] Decision and Order at 11-17.

BRB Opinion at 5-6.  According proper deference to the ALJ's factual finding — that the Jacobson audiogram was determinative — we readily conclude there is substantial evidence to support it. We therefore sustain the BRB Opinion affirming the ALJ Decision and Order of the ALJ, and we are content to affirm on its reasoning. <u>Perry v. Universal Maritime Servs.</u>, No. 03-0468 (BRB Apr. 6, 2004) (unpublished); <u>Perry v. Ceres Marine Terminals</u>, No. 2001-LHC-1909 (Dep't Labor Mar. 17, 2003).

IV.

Pursuant to the foregoing, we affirm the decision set forth in the BRB Opinion.

<u>AFFIRMED</u>

8